THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DIONNE DILLARD<br>10103 Baltimore Ave.<br>Apt. 2410<br>North College Park, MD 20740<br><br>                Plaintiff,<br><br>   v.<br><br>DISTRICT OF COLUMBIA COLLEGE ACCESS PROGRAM<br>1425 K St.<br>Suite 200<br>Washington, DC 20005<br><br>                Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiff Dionne Dillard ("Plaintiff" or "Ms. Dillard") brings this complaint against District of Columbia College Access Program ("Defendant" or "DC-CAP"), through her attorneys Clark Law Group, PLLC, alleging as follows:

## NATURE OF THE CLAIMS

1. This action is for money damages and equitable relief to redress Defendant's unlawful discrimination against and retaliatory termination of Plaintiff on the basis of religion and sex, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e, *et seq*. DC-CAP did not respond to Ms. Dillard's request for a religious accommodation with respect to their COVID-19 Vaccination Policy ("COVID-19 Policy" or "Policy"), and yet the company granted religious accommodations to similarly situated male employees. DC-CAP failed to grant a religious accommodation to Ms.

Dillard because of her sex, and illegally terminated Ms. Dillard both because of her religion and in retaliation to Ms. Dillard's opposition to the discrimination she endured during her employment.

## JURISDICTION AND VENUE

2. This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of civil rights.

3. This court may properly maintain personal jurisdiction over the Defendant because Defendant is a nonprofit organization headquartered in the District of Columbia.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because this district is where a substantial part of the events giving rise to this action occurred.

## ADMINISTRATIVE PROCEDURES

5. Prior to filing this Complaint, Plaintiff filed a charge of discrimination with the D.C. Office of Human Rights ("DCOHR") and the Equal Employment Opportunity Commission ("EEOC") on March 7, 2022, alleging retaliation and unlawful discrimination on the basis of religion.

6. Shortly thereafter, Plaintiff received a communication from the EEOC that her charge would be administratively closed by March 14, 2022, if she did not sign the charge.

7. The charge was not immediately signed when on March 8, 2022, the EEOC issued a "Notice of Right to Sue", contrary to its earlier communication to Plaintiff.

8. On July 8, 2022, Plaintiff met with an EEOC representative. Plaintiff asked EEOC to reissue her original charge, and the EEOC representative made representations to Plaintiff that the EEOC was going to conduct an investigation in regard to her charge.

9. Plaintiff asked the EEOC why her original charge had been closed within 24 hours.

10. The EEOC did not provide any explanation as to why her original charge was closed.

11. Based on EEOC representations, Plaintiff reasonably assumed that the closing of her original charge was error by the agency, and therefore her original EEOC charge was still open and being investigated by the agency.

12. The following day, on July 9, 2022, Plaintiff received a communication from the EEOC that her charge had been closed.

13. Based on her previous interactions with the agency, Plaintiff reasonably believed that her charge was ongoing and that she only had to perfect her charge by providing a signature.

14. Plaintiff continued to contact the EEOC until late November, 2022. From the continued representations from EEOC representatives, Plaintiff reasonably believed that the EEOC would reissue her original March 7, 2022 charge.

15. Plaintiff refiled her charge with DCOHR and the EEOC on November 28, 2022, alleging retaliation and unlawful discrimination on the basis of religion and sex.

16. Plaintiff intended the November 28, 2022 charge to be a perfection of her March 7, 2022 charge, by providing a signature. Therefore, the November 28, 2022 charge of discrimination relates back to the March 7, 2022 charge, which was filed within the statutory 300 day filing period of Title VII.

17. Plaintiff received a "Notice of Right to Sue" letter from the EEOC on November 29, 2022.

18. This action is timely because it has been initiated within ninety (90) days of the receipt of the November 29, 2022 Right to Sue letter.

19. Any and all other prerequisites to filing this suit have been met.

## PARTIES

20. Plaintiff is a resident of the state of Maryland.

21. Plaintiff meets the definition of employee under 42 U.S.C. § 2000e relevant to this action.

22. Defendant is a private, nonprofit organization headquartered in Washington, D.C.

23. Defendant is a private employer with over fifteen employees, which satisfies the statutory requirements under 42 U.S.C. § 2000e.

24. Defendant meets the definition of employer under 42 U.S.C. § 2000e at all times relevant to this action.

## FACTUAL ALLEGATIONS

25. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

26. Ms. Dillard identifies as female.

27. Ms. Dillard follows the Rastafarian faith.

28. On September 16, 2020, Ms. Dillard was hired by DC-CAP as a High School Advisor.

29. Ms. Dillard was a model employe and she received several awards for her work, such as an award for outstanding data entries as an advisor.

### DC-CAP did not Respond to Ms. Dillard's Formal Request for a Religious Accommodation

30. In the Spring of 2021, DC-CAP informed the staff that they would be returning to work in-person and would be required to follow a new COVID-19 Policy. This Policy would be implemented at the beginning of the following school year in September, 2021.

31. The Policy conflicted with Ms. Dillard's sincere religious beliefs.

32. In August 2021, Ms. Dillard informed DC-CAP of the conflict between the policy and her religious beliefs, and submitted her request for a reasonable accommodation.

33. Ms. Dillard asked her three supervisors, DaRonna Jones ("Jones"), Tamika Smith ("Smith"), and Jordan Spooner ("Spooner"), about the status of her request several times over the following weeks.

34. DC-CAP did not respond to Ms. Dillard's request. She never received a follow-up to her request, nor a signed copy of the form she submitted or a formal policy to follow.

### DC-CAP Refused to Engage in the Interactive Process for an Accommodation Because of Ms. Dillard's Sex

35. Based on information and belief, similarly situated male employees were able to receive religious accommodations in regards to the COVID-19 vaccination policy, whereas female employees, including Ms. Dillard, were denied.

### Ms. Dillard Complained About her Discriminatory Treatment to her Supervisor and the Director of Human Resources

36. On August 16, 2021, an email went out to all employees that identified employees who either had been granted a religious accommodation or had requested one.

37. During an organization-wide meeting on August 16, 2021, Jones stated that there would be consequences during upcoming reviews for anyone with accommodations that failed to meet the original deadline regarding proof of COVID vaccination or lack thereof.

38. Ms. Dillard had missed that deadline because DC-CAP had not responded to her religious accommodation request.

39. Ms. Dillard was the only person with an upcoming review who had either been granted or requested an accommodation.

40. Ms. Dillard made a complaint to both Jones and the director of Human Resources, Lynn Fennell ("Fennell") about Jones' threatening and discriminatory comments.

41. During a subsequent presentation by Human Resources, both Jones and Fennell asked a number of very personal questions of everyone regarding the COVID Policy.

42. Ms. Dillard made a complaint to Fennell about how she felt these questions were invasive and discriminatory, and further complained about the lack of response from DC-CAP regarding her accommodation request.

### **DC-CAP Terminated Ms. Dillard Because of Her Religion, Her Sex, and for Her Opposition to the Discrimination Against Her**

43. On August 23, 2021, an email was sent out to employees suggesting that religiously accommodated employees may be terminated.

44. On September 7, 2021, Ms. Dillard submitted a request for bereavement leave for the loss of her grandmother.

45. Ms. Dillard spoke to all three of her supervisors, Jones, Smith, and Spooner, to ensure her leave was approved: all three verbally approved of her leave.

46. On the day of her grandmother's funeral, September 13, 2021, DC-CAP sent Ms. Dillard an email saying that her leave had not been approved and that she was required to return, in-person, to work within forty-eight (48) hours or she would be terminated.

47. Ms. Dillard informed DC-CAP that it was impossible for her to physically return in the time allotted.

48. On September 16, 2021, DC-CAP fired Ms. Dillard.

## FIRST CAUSE OF ACTION

### Failure to Accommodate Employee's Sincerely Held Religious Beliefs in Violation of Title VII

49. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

50. Ms. Dillard is a member of a protected class under Title VII, as she was terminated from her employment at DC-CAP because of her religion.

51. Ms. Dillard is Rastafarian based on her sincere religious beliefs.

52. Ms. Dillard's sincere religious beliefs conflicted with DC-CAP's COVID-19 Policy, which was an employment requirement.

53. Ms. Dillard informed DC-CAP that her religious beliefs conflicted with an employment requirement.

54. Ms. Dillard requested a religious accommodation.

55. DC-CAP did not respond to Ms. Dillard's request for religious accommodation, despite Ms. Dillard consistently inquiring about the status of her request.

56. DC-CAP terminated Ms. Dillard on September 16, 2021, because of her religion.

57. Ms. Dillard would have been granted a reasonable religious accommodation, which would have allowed her to work despite the conflict between her faith and DC-CAP's employment requirements, had DC-CAP engaged in the interactive process in good faith.

## SECOND CAUSE OF ACTION

### Disparate Treatment on the Basis of Sex in Violation of Title VII

58. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

59. Ms. Dillard is a member of a protected class under Title VII, as she was terminated from her employment at DC-CAP because of her sex.

60. Ms. Dillard is female.

61. Ms. Dillard requested a religious accommodation.

62. DC-CAP did not respond to her religious accommodation request, despite Ms. Dillard consistently inquiring about the status of her request.

63. DC-CAP granted religious accommodations to similarly situated male employees.

64. DC-CAP refused to grant Ms. Dillard a religious accommodation because of her sex.

## THIRD CAUSE OF ACTION

### Retaliation in Violation of Title VII

65. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

66. In August 2021, Ms. Dillard engaged in protected activity under Title VII when she directly complained to management about the discrimination that she faced while at work.

67. After Ms. Dillard complained to management, the DC-CAP circulated an email suggesting that employees who were requesting or had been granted religious accommodations for the COVID-19 Policy would be terminated.

68. On September 7, 2021, Ms. Dillard requested bereavement leave and received verbal approval for said leave from all three of her supervisors.

69. Management waited until September 13, 2021, the day of her grandmother's funeral, to inform Ms. Dillard that her leave had not been approved.

70. Management required Ms. Dillard to return to work in-person within 48 hours, which was physically impossible for her.

71. Requiring Ms. Dillard to return to work in-person on such a short timescale was pretext.

72. On September 16, 2021, DC-CAP unlawfully terminated Plaintiff in retaliation.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Ms. Dillard requests that judgment be entered in her favor against Defendant DC-CAP as follows:

A. An award of damages in an amount to be determined at trial to compensate Plaintiff for monetary damages resulting from loss of income, both past and future, compensation and benefits as a result of her unlawful retaliatory termination from DC-CAP.

B. An award of damages in an amount to be determined at trial to compensate Plaintiff for physical and emotional damages resulting from both her unlawful retaliatory termination from DC-CAP as well as the discrimination on the bases of sex and religion that she suffered during her employment.

C. Attorney's fees and costs.

D. Such other and further relief as the court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: February 27, 2023

                                                     Respectfully submitted,

                                                     /s/ Denise M. Clark
                                                   Denise M. Clark, Esq. (420480)
                                                   Clark Law Group, PLLC
                                                   1100 Connecticut Ave, N.W., Suite 920
                                                   Washington, D.C. 20036
                                                   (202) 293-0015
                                                   dmclark@benefitcounsel.com